AUSA: Ryan A. Particka                Telephone: (313) 226-9635
Special Agent:  ☑ Matthew Sluss       Telephone:  (313) 919-1327

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America

v.

Zina Isabel Thomas
a/ka Zina Isabel Morgan (Thomas)

Case No.       2:24-mj-30062
                Judge: Unassigned,
                Filed: 02-22-2024

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____April 22, 2022 to Present_____ in the county of _____Wayne_____ in the _____Eastern_____ District of _____Michigan_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |
| 18 U.S.C. § 1957 | Money Laundering |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

This criminal complaint is based on these facts:

☐ Continued on the attached sheet.

_____
Complainant's signature

Matthew Sluss - Special Agent
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ____February 22, 2024____

City and state:  Detroit, MI _____

_____
Judge's signature

Hon. Elizabeth A. Stafford - United States Magistrate Judge
Printed name and title

Hon. Patricia T. Morris, U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Matthew Sluss, Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, state that:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2.      I have been employed by the FBI as a Special Agent since September 2017. During my employment with the FBI, I have investigated Federal crimes including mail fraud, wire fraud, bank fraud, money laundering, identity theft, bankruptcy fraud, and various other criminal matters. At all times during the investigation described in this affidavit, I have been acting in an official capacity as a Special Agent of the FBI.

3.      This affidavit is made in support of a criminal complaint and arrest warrant for ZINA ISABEL THOMAS aka ZINA ISABEL MORGAN (THOMAS) for violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1957 (Money Laundering), and 18 U.S.C. §1028A (Aggravated Identity Theft).

4.      This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant; therefore, this affidavit does not contain every fact that I have learned during the course of the investigation. I have only set forth the facts necessary to establish probable cause to believe that THOMAS violated the statutes identified above. The information contained in this affidavit is based upon my personal knowledge, training and experience, as well as the combined knowledge, training, and experience of other law enforcement officers and agents with whom I have had discussions.

5.      18 U.S.C. § 1343 criminalizes schemes or artifices to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, when for the purpose of executing or attempting to execute the scheme, the person transmits or causes the transmission of any writings, signs, signals, pictures, or sounds by means of wire communication in interstate commerce.

6.      18 U.S.C. § 1349 criminalizes attempting or conspiring to commit any offenses under Chapter 63 of 18 U.S.C., including a violation of 18 U.S.C. § 1343 (Wire Fraud).

7.      18 U.S.C. § 1957 criminalizes knowingly conducting a monetary transaction in criminally derived property in an amount greater than $10,000, which is in fact proceeds of specified unlawful activity. Specified unlawful activity includes 18 U.S.C. § 1343 (Wire Fraud).

8.      18 U.S.C. § 1028A criminalizes knowingly transferring, possessing, or using without permission, the identification of another person during and in relation to a predicate felony, to include 18 U.S.C. § 1343 (Wire Fraud).

## II.      INVESTIGATIVE OVERVIEW

9.      In November 2023, the Wayne County Register of Deeds, Mortgage and Deed Fraud Unit (DFU), contacted the FBI to report that THOMAS and others were engaging in potentially fraudulent activity. I am a case agent assigned to this investigation.

10.      DFU reported it had discovered a deed fraud scheme involving multiple subjects and victims located in the Detroit area. The victims reported that the ownership interest in their homes was transferred to unknown persons, without their authority, by way of quitclaim deeds that the victims did not sign.

11.      DFU discovered the victims owned homes that were listed and published in the 2023 Wayne County Treasurer Notice of Foreclosure List. Based on the investigation, it does not appear that these properties were foreclosed upon; rather, THOMAS and others working with her intervened, fraudulently taking control of the properties and selling them to interested buyers for personal gain.

12.      Through my investigation, I have learned:

- UNITED COMMUNITY HOUSING COALITION (UCHC) is a 501(c)(3) nonprofit organization providing housing assistance to

3

Detroit's low-income residents. As a part of that assistance, UCHC provides eviction defense and foreclosure prevention assistance by providing free counseling services for income-eligible residents who own or occupy a home in, or at risk of, property tax or mortgage foreclosure.

- THOMAS has been an employee with UCHC since 2021. THOMAS is currently UCHC's Director of Homeownership Programs. In addition to being a UCHC employee, THOMAS is a real estate agent and public notary.

- PERSON 1 has been an employee at UCHC since February 2022. PERSON 1 is currently a UCHC Property Tax Prevention Counselor. PERSON 1 is also a public notary.

- PERSON 2 has been an employee at the Wayne County Treasurer Office.

- PERSON 3 has been identified by DFU as recording deeds notarized by PERSON 1 and/or THOMAS. PERSON 3 was not an employee of UCHC.

### III.   PROBABLE CAUSE

### EXAMPLE 1: 1XXXX BRINGARD DRIVE

13.    Around October 17, 2023, DFU met with Victim 1. Victim 1 resides at 1XXXX Bringard Drive, Detroit, MI (the Bringard property).

14.    Wayne County deed records show Victim 1 was deeded the Bringard property on January 4, 2017, from Prior Owner 1 & Prior Owner 2. The deed was recorded on April 28, 2017.

15.    Victim 1 informed DFU she has known Prior Owner 1 for over 40 years and that he bought the Bringard property for Victim 1 and her family. Victim 1 advised that Prior Owner 1 currently resides in Florida.

16.    The Bringard property was listed on the 2023 Wayne County Tax Foreclosure list. Further, your affiant learned that Victim 1 is a cancer patient who is currently undergoing chemotherapy.

17.    Victim 1 informed DFU she found a letter placed in her mailbox, addressed from persons of interest "Q.R." and "B.Y.". The letter informed Victim 1 the property had been purchased and that they wanted to arrange a time to speak regarding the next steps. After receiving the letter, Victim 1 searched land records and discovered two deeds. The first deed showed a conveyance from Prior Owner 1 to interim buyer H.R.M. The second deed showed a conveyance from H.R.M. to Q.R.

18.    However, as noted above, land records show the Bringard property was first deeded from Prior Owner 1 & Prior Owner 2 to Victim 1 (and recorded) in April 2017. Therefore, the June 2023 deed purporting to be from Prior Owner 1 to interim buyer H.R.M. was inherently problematic, as it was intended to convey the property from someone that did not hold title at that time.

19.    During an interview, Victim 1 also advised that Prior Owner 1 was in Florida at the time the problematic June 2023 deed was purportedly signed by Prior Owner 1. Victim 1 further indicated the purportedly notarized signature on the problematic deed was not Prior Owner 1's signature. Additionally, your Affiant observed that the problematic deed failed to include a signature block for Prior Owner 2, whereas the original deed conveying interest to Victim 1 from Prior Owners 1 & 2 did contain a signature block for Prior Owner 2.

20.    Around October 25, 2023, Victim 1 received a Notice to Quit to Recover Possession of Property from Q.R.  The notice provided all occupants must move by November 26, 2023. Victim 1 has contested the eviction and proceedings remain ongoing.

21.    DFU reviewed a copy of the deed showing a conveyance of the Bringard property from Prior Owner 1 to interim buyer H.R.M. The deed was notarized by PERSON 1 on February 18, 2023, and recorded by PERSON 1 on June 26, 2023.

6

22.     Wayne County Register of Deeds requires the recorder to present identification when recording a deed. DFU also captures surveillance footage of individuals recording deeds.  On June 26, 2023, DFU captured a photo of PERSON 1 recording the deed. DFU records show PERSON 1 provided her identification when she recorded the deed.

23.     According to DFU records, although PERSON 1 recorded the deed, a phone number associated with THOMAS (313-XXX-9788) was provided, and THOMAS was indicated as the "Return To" recipient of the deed.

24.     After recording the deed conveying the property from Prior Owner 1 to interim buyer H.R.M., PERSON 1 then recorded a new deed. This deed showed a conveyance from interim buyer H.R.M. to Q.R. This deed was notarized and recorded by PERSON 1 on July 17, 2023.

25.     According to DFU records, while PERSON 1 recorded the deed, she once again provided the same phone number associated with THOMAS, 313-XXX-9788.

26.     Similar to the first recording, DFU captured a photo of PERSON 1 recording this deed. PERSON 1 also provided a copy of her identification when recording this deed.

<u>BRINGARD - PTA RECORDS</u>

27.     In conjunction with Victim 1's interview, FBI reviewed records from the Wayne County Property Tax Administration (PTA) System. The PTA system is a

repository allowing the Wayne County Treasurer to store and input data relating to properties and their county tax status.  Wayne County employees can add updates or comments sent to and/or received from individuals paying or entering into a payment plan for unpaid county taxes.

28.    On June 29, 2023, PERSON 2 entered the following into the PTA system: "Action: Don't Foreclose; Reason: Other; Remarks: Don't' foreclose owner occupied per Jim B/Zina M. Please see PTA for uploaded documents." Based on the investigation, it appears that "Jim B" is a reference to PERSON 2's supervisor and that "Zina M." is a reference to THOMAS.

29.    FBI Detroit reviewed the documents PERSON 2 uploaded into the PTA system. Those items included a driver's license in the name of interim buyer H.R.M, with the address of the Bringard property; the deed purportedly conveying the Bringard property from Prior Owner 1 to interim buyer H.R.M., referenced by your Affiant above; and a Principal Residence Exemption (PRE) Affidavit appearing to have been signed by interim buyer H.R.M., listing their address as the Bringard property.

30.    FBI conducted a search for the driver's license number for H.R.M. through the Law Enforcement Information Network (LEIN). The Michigan Law Enforcement Network (LEIN) is a statewide computerized-information system, established as a service to Michigan's criminal justice agencies.  A search of the

driver's license number appearing on the license for interim buyer H.R.M. returned no results.  FBI conducted an additional search on LEIN for the name and date of birth appearing on the license. This search also returned no results. FBI then conducted an address search on LEIN to verify the resident residing at the address. The results showed only Victim 1 residing at the address.  The true name of the individual pictured on the H.R.M. license remains unknown; however, based on the above information it appears that the H.R.M. *identity* used as an interim buyer was fabricated.

## BRINGARD - TREASURER EMAILS

31.    During the investigation, the FBI obtained PERSON 2's Wayne County emails, from approximately May 1, 2023, to November 28, 2023. After reviewing PERSON 2's emails, the FBI learned THOMAS sent emails to JACKSON.  Your Affiant observed certain emails containing attachments, which included deeds to properties that are the subject of DFU investigations. THOMAS sent these emails from her official UCHC email account to PERSON 2's official Wayne County email account.

32.    On June 29, 2023, an email was sent from THOMAS's UCHC account to PERSON 2's Wayne County account. The email was titled "PRE for removal." The email states "Please see the attached for possible foreclosure."  The email included several attachments. The attachments contained deeds to properties, identified by

your Affiant to be some of the same properties investigated by the DFU. Attachments contained a deed, a driver's license, a PRE-Affidavit, and a DTE energy bill.

33. In an attachment titled "1XXXX Bringard pre", your Affiant observed a copy of the deed conveying the Bringard property from Prior Owner 1 to interim buyer H.R.M. and a copy of the apparently counterfeit driver's license purported to be interim buyer H.R.M.'s, as described above.

BRINGARD - THOMAS'S UCHC COMPUTER

34. In January 2024, FBI obtained an electronic copy of documents saved on THOMAS's UCHC work computer. In review of the documents provided, your Affiant noted a document titled "1XXXX Bringard pre.pdf". The document was the same document attached to the June 29, 2023, email sent from THOMAS's UCHC account to PERSON 2's Wayne County account, as described above.

**EXAMPLE 2: 2XXX MONTGOMERY**

35. Around October 5, 2023, DFU met with Victim 2 and Victim 3, a married couple.

36. Wayne County records show Victim 2 acquired 2XXX Montgomery Street, Detroit, Michigan (the Montgomery property) around February 17, 2012.

37. The Montgomery property was listed in the 2023 Wayne County Register Tax Foreclosure list. Further, your affiant learned that Victim 2 is currently receiving

Supplemental Security Income (SSI) benefits from the Social Security Administration.

38.    Victim 3 informed DFU that he received a tax bill with a different name for the property and then discovered two suspect deeds in the land records.  He provided that PERSON 3 filed an eviction claim in 36th District Court against him to remove him from the property.

39.    The first deed shows a conveyance from Victim 2 to an interim buyer[1]. The second deed shows a conveyance from the interim buyer to PERSON 3.

40.    The FBI interviewed Victim 2 in February 2024. Victim 2 provided she has never met THOMAS or PERSON 1 (who notarized the deed) and never signed a deed to transfer the Montgomery property.

41.    DFU records also indicate Victims 2 & 3 received a text from telephone number 313-XXX-8300. FBI conducted open-source checks on telephone number 313-XXX-8300. FBI confirmed telephone number 313-XXX-8300 belongs to PERSON 3. One of the texts can be seen in the image below:

---

[1] The interim buyer used for this transfer has the same name as Victim 4, described below. Based on the investigation though, it does not appear that Victim 4 had any knowledge of (nor involvement) with this property or its fraudulent transfer.  As with the prior property, it seems that the interim buyer's identity was fabricated or constructed from pieces of other identities and/or identification documents.

Sir or ma'am, if you would've paid your taxes, none of this would've happened and if you are the rifle owner, you would've showed up in court so again I will see you in court and please stop texting my phone before I sue you for harassment as well, take your house

42.     FBI reviewed a copy of the deed for the Montgomery property.  The deed shows a conveyance from Victim 2 to the interim buyer. The deed was notarized by PERSON 1 on May 12, 2022, and recorded by PERSON 1 on April 4, 2023.

43.     DFU captured a photo of PERSON 1 recording the first deed on April 4, 2023. DFU records show PERSON 1 provided a copy of her identification when recording the deed.

44.     Wayne County records show PERSON 3 recorded the second deed relating to the property on May 15, 2023.  The deed shows a conveyance from the interim buyer to PERSON 3. The deed was notarized by THOMAS (under the name Zina I. Morgan) on May 8, 2023, and recorded by PERSON 3 on May 15, 2023.

45.     DFU captured a photo of PERSON 3 recording this deed on May 15, 2023. DFU records also show PERSON 3 provided her identification when recording the deed. DFU records also indicate the number provided, 313-XXX-8300, is the same number listed on the eviction summons.

12

46.     The FBI interviewed Victim 3 in February 2024. He indicated PERSON 3 was seeking to evict him; as such, Victim 3 unknowingly went to UCHC to get assistance. The lady at the front desk asked him to come back the next day. Victim 3 did so and ended up meeting with THOMAS. Victim 3 asked THOMAS how they could notarize his wife's signature on the deed without her being present. At first, THOMAS said they had nothing to do with it. THOMAS then indicated that a person who she trusted (i.e., the name of the interim buyer), provided the deed to be notarized.

47.     Subsequent to that meeting, THOMAS informed Victim 3 that she would put the property back into his wife's name. According to Victim 3, on the day of the eviction hearing THOMAS and PERSON 3 met him outside the courtroom. From a review of court records, it appears the hearing was then dismissed.

48.     Wayne County Register of Deed records show a new deed was recorded on October 6, 2023. This deed shows a conveyance from PERSON 3 back to Victim 2. The deed was notarized by another person of interest, notary G.B., on October 6, 2023, and recorded by G.B. that same day.

### MONTGOMERY - PTA RECORDS

49.     In conjunction with the information provided by DFU, FBI Detroit reviewed copies of the Montgomery property's PTA records.

50.   On April 18, 2023, PERSON 2 entered a note requesting foreclosure be stopped. The note read, "Action: Don't Foreclose; Reason: Payment Plan on File; Remarks: Don't' foreclose owner occupied per Jim B/Zina M (UCHC). Please PTA for uploaded documents."

MONTGOMERY - THOMAS'S UCHC COMPUTER

51.   In review of documents obtained from THOMAS's UCHC computer, your Affiant noted a document titled "2XXX montgomery pre pta". The document included a copy of a driver's license purporting to be the interim buyer's, a copy of the deed recorded on April 4, 2023, conveying the Montgomery property from Victim 2 to the interim buyer, and a Principal Residence Exemption (PRE) Affidavit.

52.   The investigation determined that the driver's license purporting to be the interim buyer's driver's license (in the name of Victim 4; see footnote 1, above) was invalid. The driver's license also displayed an "ISS" date of 10-27-2022, an "EXP" date of 01-15-1990, and a "DOB" of 01-15-1990. As such, the driver's license appears to have been created with an expiration date approximately 32 years before its issuance date. The true name of the individual pictured on this license remains unknown; however, based on the above information above (and similar to the prior interim buyer), it appears the *identity* used for this interim buyer was fabricated.

14

## EXAMPLE 3: 1XXX LESURE

53.     On October 11, 2023, DFU received a complaint from a property manager regarding 1XXX Lesure, Detroit, Michigan (the Lesure property).  Two deeds were discovered in the land records.

54.     The Lesure property was listed on the 2023 Wayne County Tax Foreclosure list.

55.     The first deed appeared to show an unauthorized conveyance (from a person not affiliated with the holding company that owned the Lesure property) to interim buyer S.W. Further, the complaining witness advised that no one authorized the sale of the Lesure property, and that the owner resides out of state. PERSON 1 appeared to notarize the deed on March 18, 2023, and PERSON 3 appeared to record the deed on June 27, 2023.

56.     The second deed showed a conveyance from interim buyer S.W. to Victim 5, a Michigan Limited Liability Company. PERSON 1 appeared to notarize the deed on June 18, 2023, and record the deed on July 17, 2023.

57.     According to DFU records, while PERSON 1 recorded the deed, the phone number associated with THOMAS, 313-XXX-9788, was again provided.

58.     During the investigation, your Affiant learned that at least seven properties (all on the tax foreclosure list), including the Lesure property, were deeded to Victim

5 on or around July 17, 2023. All respective deeds were notarized by THOMAS or PERSON 1, and all were recorded by PERSON 1.

59.    Based on a review of financial records, it appears a $33,000 check was written from the resident agent of Victim 5 to ZT Realty. The check was dated July 14, 2023, and deposited on or around July 17, 2023, into the JPMorgan Chase Bank account for "ZT REALTY LLC" (X2788), of which THOMAS is the registered agent and sole signatory on the bank account.

60.    The balance of X2788 before the $33,000 deposit was approximately $414.19; there were no other deposits into the account until July 31, 2023.

61.    On July 26, 2023, a $5,000 disbursement was made from X2788 with the transaction description of "Zelle Payment To [PERSON 2]".

62.    On July 27, 2023, a second $5,000 disbursement was made from X2788 with the transaction description of "Zelle Payment To [PERSON 2]"

63.    The two $5,000 disbursements were both received by CITIBANK with the recipient name of PERSON 2 and a recipient token that matches PERSON 2's known cell phone number.

64.    On July 26, 2023, a $12,000 disbursement was made from the ZT Realty account (X2788) to a personal bank account held in the name of THOMAS; in other words, a monetary transaction in an amount greater than $10,000.

16

## LESURE - PTA RECORDS

65.     On June 29, 2023, PERSON 2, entered the following information into the PTA system: "Action: Don't Foreclose; Reason: Other; Remarks: Don't' foreclose owner occupied per Jim B/Zina M. Please see PTA for uploaded documents."

66.     PTA records show the following items were uploaded: A Michigan driver's license in the name of interim buyer S.W., the deed PERSON 1 recorded conveying the Lesure property to interim buyer S.W.; a Principal Residence Exemption (PRE) Affidavit, dated June 28, 2023, appearing to be signed by interim buyer S.W.; and a DTE energy bill in the name of interim buyer S.W.

67.     FBI attempted to verify the validity of the driver's license appearing to belong to interim buyer S.W. Open-source searches appeared to indicate that the driver's license was not valid. Once again, the true name of the person depicted on the "S.W." license is unknown; however, based on the above it appears that the S.W. *identity* used as an interim buyer was fabricated.

## LESURE - THOMAS'S UCHC COMPUTER

68.     In review of documents obtained from THOMAS's UCHC computer, your Affiant noted a document titled "1XXXX lesure pre.pdf". The document included a copy of a driver's license belonging to interim buyer S.W., the deed PERSON 1 recorded conveying Lesure to interim buyer S.W.; a Principal Residence Exemption (PRE) Affidavit, dated June 28, 2023, appearing to be signed by interim buyer S.W.;

17

and an apparently fake DTE energy bill (discussed further below) in the name of interim buyer S.W. The document appeared to match the document uploaded in the PTA Records.

### EXAMPLE 4: 1XXXX Edmore

69.    According to records provided by the DFU, a deed conveying the property of 1XXXX Edmore, Detroit, Michigan (the Edmore property) from Victim 6 to interim buyer C.H.II was notarized and recorded by PERSON 1 on June 21, 2023.

70.    A second deed conveying the Edmore property from interim buyer C.H.II to person of interest D.B. was notarized by PERSON 1 and recorded by PERSON 1 on October 4, 2023.

### EDMORE - TREASURER EMAILS

71.    In review of PERSON 2's Wayne County emails, it appears an email was sent from THOMAS's UCHC account to PERSON 2's Wayne County account on June 27, 2023. The email appeared to be a forward of an email sent from a scanning device using UCHC's domain to THOMAS's UCHC account on June 27, 2023. The body of the email reads "Forgot 1".

72.    The email appeared to forward an attachment "doc12159620230627133418.pdf". The document included a copy of the quit claim deed recorded on June 21, 2023, conveying the Edmore property from Victim 6 to interim buyer C.H.II; a copy of the Principal Residence Exemption (PRE) Affidavit

dated June 27, 2023 and purportedly signed by interim buyer C.H.II; and copy of a DTE bill in the name of interim buyer C.H.II.

73.    The FBI interviewed Witness 1, an UCHC executive, multiple times in January 2024. Witness 1 provided that an email sent from a scanner with UCHC's domain, would indicate the email was sent from a scanner physically located within UCHC's building.

<u>EDMORE - THOMAS'S UCHC COMPUTER</u>

74.    In review of documents obtained from THOMAS's UCHC computer, your Affiant noted a document titled "1XXXX edmore pre.pdf". The document included a copy of the PRE and DTE bill as described above. It also included a copy of a driver's license purporting to be interim buyer C.H.II's driver's license.

75.    The investigation determined that the driver's license purporting to be interim buyer C.H.II's license was not valid. Once again, the true name of the person depicted on the "C.H.II" license is unknown; however, based on the above it appears that the C.H.II *identity* used as an interim buyer was fabricated.

**EXAMPLE 5: 2xxxx MANSFIELD**
**(THOMAS'S CURRENT RESIDENCE)**

76.    It appears THOMAS is currently residing at 2xxxx, Mansfield, Detroit, Michigan (the Mansfield property).

77.    The Mansfield property was included on the December 2022 Wayne County Treasurer "Notice of Forfeited Property Subject to Foreclosure in 2023" listing.

78.    The most recent deed discovered pertaining to the Mansfield property conveyed the property from Victim 7 to interim buyer M.S. The deed was notarized by person of interest G.B., dated August 22, 2021, and recorded on August 28, 2023.

79.    According to DFU records, the deed was recorded by PERSON 1 and marked to be returned to PERSON 1; however, the phone number associated with THOMAS, 313-XXX-9788, was again provided.

## MANSFIELD - PTA RECORDS

80.    On August 31, 2023, the following information was entered into the PTA system: "Per Jim Berry – please remove the two Mansfield properties based on owner occupancy."

## MANSFIELD - TREASURER EMAILS

81.    On August 29, 2023, an email was sent from THOMAS' UCHC account to James Berry's and JACKSON's Wayne County email accounts. The email was titled "PRE's for possible removal." The emails states, "Please see attached for consideration of possible removal from foreclosure." The email included an attachment regarding the Mansfield property. Within the attachment, your Affiant observed a copy of the deed conveying the Mansfield property from Victim 7 to interim buyer M.S., a copy of a driver's license purported to be M.S.'s driver's

20

license, and a DTE Energy Bill. The DTE energy bill was in the name of M.S., with the Mansfield property address, and account number of X8284.

MANSFIELD – DTE Energy Bill

82.     While the DTE Energy Bill displayed M.S.'s name and the Mansfield property address; the account number, due date, total due, and monthly energy usage was identical to other copies of DTE energy bills emailed from THOMAS' UCHC email account to JACKSON's Wayne County account. As further described below, the X8284 account number was a DTE account number assigned to a property on Leslie Street, Detroit, Michigan, which is associated with THOMAS.

MANSFIELD – Driver's License

83.     The investigation determined that the driver's license purported to be M.S.'s was invalid. Once again, the true name of the person depicted on the "M.S." license is unknown; however, based on the above it appears that the M.S. *identity* used as an interim buyer was fabricated.

MANSFIELD – THOMAS's Occupancy

84.     Analysis of telephone records obtained from T-Mobile shows the cellular telephone with phone number 313-XXX-9788 (the phone number associated with THOMAS) was located at, or near, the Mansfield property on the morning of February 14, 2024.

21

85.    On the morning of February 15, 2024, the FBI observed THOMAS exit the Mansfield property and drive away from the property in a Cadillac SUV. Shortly after, the FBI observed the same Cadillac SUV parked on the street in front of UCHC.

## IV.    GENERAL INFORMATION

86.    DFU has indicated they have approximately 30 open complaints that appear to be part of this scheme. It appears the first deed related to DFU's open complaints was recorded on April 22, 2022.

87.    The approximately 30 open complaints correlate to roughly 31 properties and 52 deeds. Of the 52 known deeds, THOMAS notarized 14, PERSON 1 notarized 26, and the remaining 12 were notarized by others. Of the 52 known deeds, THOMAS recorded/submitted 2, PERSON 1 recorded/submitted 24, PERSON 3 recorded/submitted 17, and the remaining 9 were recorded/submitted by others.

88.    During the investigation, your Affiant has learned that at least some of the properties within the purview of this scheme were sold to third parties. Proceeds from these sales have included payment by cash, wire transfer, and check. Proceeds have been paid directly to THOMAS.

### GENERAL INFORMATION - DRIVER'S LICENSES

89.    DFU provided copies of approximately eight driver's licenses that were uploaded to Wayne County's PTA system. All eight driver's licenses were related

to deeds notarized by PERSON 1. The investigation has determined that all eight driver's licenses appear to be invalid. Copies of all eight driver's licenses were found within the documents obtained from THOMAS's UCHC computer.

GENERAL INFORMATION – EMAIL ACTIVITY

90.     The FBI obtained information related to THOMAS's UCHC email address. Upon reviewing that information, FBI Agents discovered that on February 20, 2023, April 5, 2023, April 6, 2023, and April 13, 2023, approximately nine emails from THOMAS'S Gmail account were sent to THOMAS's UCHC account, which contained copies of a total of 11 driver's licenses.

91.     One of the driver's licenses was a copy of the apparently counterfeit driver's license (purportedly issued in the name of Victim 4 that matched the driver's license THOMAS emailed to PERSON 2, described above in connection with the Montgomery property.

92.     One of the other 11 driver's licenses was also in the name of Victim 4 with the same "DOB" and photograph as the driver's license associated with the Montgomery property, but using a different address and a corrected expiration date. Both of these licenses were sent from THOMAS's Gmail account to the UCHC account on the same day. Neither of these licenses depict Victim 4.

93.     As discussed above, the name on both versions of the purported "Victim 4" driver's licenses was the same as that of an individual THOMAS did, in fact, sell a

23

*different* property to in or around April 2022. However, the photograph and other identifying information on these licenses do not match the rest of Victim 4's actual identifying information. To facilitate that prior sale to Victim 4, THOMAS notarized a deed for the underlying property in a matter that appears consistent with the overall scheme as outlined throughout this affidavit.

<u>GENERAL INFORMATION - DTE ENERGY BILLS</u>

94. In review of PERSON 2's Wayne County emails, it appears in June and July of 2023, multiple emails were sent from THOMAS's UCHC account to PERSON 2's Wayne County account, seemingly to provide documents for the possible removal of properties from foreclosure. As described specifically above, these documents would, at times, include DTE bills. Of the DTE bills reviewed, the customer names and addresses varied; i.e., the address would match the address of the property to possibly be removed from foreclosure. However, the account number, due date, total due, and monthly energy usage were identical amongst three sets of bills—one set of three bills, another set of four bills, and a set of six bills. It appears all copies of the bills shared one of two account numbers X6507 or X8284.

95. Records provided by DTE ENERGY indicated account X6507 reflected DTE Customer 1, for service at 3XXX Leslie Street, Detroit, Michigan from February 8, 2022, through September 13, 2022. Further, account X8284 reflected DTE Customer

2 for service at the same Leslie property from January 10, 2023, through June 11, 2023.

96.    Neither DTE Customer 1 nor DTE Customer 2's names appeared on the copies of the DTE bills emailed from THOMAS's UCHC account to PERSON 2's Wayne County account.

97.    Open-source information indicates the Leslie property was previously sold by THOMAS (acting as the realtor), to person of interest T.M. in 2012. The deed conveying the property to person of interest T.M. in 2012 is the last deed on record with the Wayne County Register of Deeds.

98.    Further, according to records from the State of Michigan, THOMAS and person of interest T.M. were married from January 1988 to January 2006.

<u>GENERAL INFORMATION - UCHC</u>

99.    The FBI interviewed Witness 2, another UCHC executive, in February 2024. According to Witness 2, UCHC currently has approximately four notaries. THOMAS and PERSON 1 are both notaries, but they are not the main notaries at UCHC—almost all of UCHC's deed notarizations were done by other notaries. It would not be expected for THOMAS or PERSON 1 to notarize deeds unless the other two notaries were not available, and it was an emergency or time-sensitive situation.

100.   While notarizing a deed, any notary at UCHC would be required to verify identification of the individual signing the document.

101.   PERSON 1 does not report directly to THOMAS; PERSON 1 has her own direct supervisor.

GENERAL INFORMATION - CASH APP TRANSACTIONS

102.   Your affiant has reviewed Cash App transfer activity and has observed the following, between March 2, 2023 and November 29, 2023:

- THOMAS transferred ~$505 to PERSON 1 over 11 transactions;
- THOMAS transferred ~$3,300 to PERSON 2 in 8 transactions;
- THOMAS transferred ~$250 to PERSON 3 over 2 transactions; and
- PERSON 2 transferred ~$1,200 to THOMAS in 1 transaction.

103.   The telephone number associated with THOMAS's Cash App account was the previously referenced 313-XXX-9788.

104.   The telephone number associated with PERSON 1's Cash App account was 313-XXX-6467.

GENERAL INFORMATION - COMMUNICATIONS

105.   Open-source records indicates that THOMAS's telephone number was 1-313-XXX-9788; PERSON 1's telephone number was 1-313-XXX-6467 (the number associated with her Cash App).

106.   Records from T-Mobile indicates the number 1-313-XXX-9788 has the subscriber name and bill name of TAZ AND ASSOCIATES. According to the

Michigan Department of Licensing and Regulatory Affairs, THOMAS is the resident agent of TAZ & ASSOCIATES.

107.   Your affiant reviewed communication history from T-Mobile for telephone number 1-313-XXX-9788, and noted the following between January 1, 2023 and December 6, 2023:

- THOMAS and PERSON 1 exchanged 142 text messages— 35 of those messages were exchanged between 9PM and 4AM;
- THOMAS and PERSON 1 conducted 244 calls— 30 of those calls were exchanged between 9PM and 4AM;
- THOMAS and PERSON 2 conducted 777 calls— 115 of those calls were between 9PM and 2AM; and
- THOMAS and PERSON 3 conducted 223 calls— 39 of those calls were exchanged between 9PM and 1AM

## V.   CONCLUSION

108.   Your affiant submits that there is probable cause to believe that ZINA ISABEL THOMAS aka ZINA ISABEL MORGAN conspired with one or more other individuals in order to devise and perpetrate a scheme or artifice to defraud and to obtain money or property. In furtherance of and to execute this scheme, THOMAS sent or caused to be sent numerous emails and other writings, signs, signals, and pictures in interstate commerce by means of wire communication, as set forth above.

109.   Your affiant also submits that there is probable cause to believe that ISABEL THOMAS aka ZINA ISABEL MORGAN conducted a monetary transaction of more

than $10,000, using proceeds that were obtained through the related specified unlawful activity of wire fraud.

110.   Your affiant also submits that there is probable cause to believe that ZINA ISABEL THOMAS aka ZINA ISABEL MORGAN used identifying information of one or more other individuals, without permission, in furtherance of the scheme.

111.   Therefore, your Affiant believes that probable cause exists that ZINA ISABEL THOMAS aka ZINA ISABEL MORGAN violated 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1957 (Money Laundering), and 18 U.S.C. §1028A (Aggravated Identity Theft).

MATTHEW SLUSS
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me
or by reliable electronic means

HON. PATRICIA T. MORRIS
United States Magistrate Judge
Eastern District of Michigan

28