United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                  Case No. 25-20649-2

v.

                                  Hon. Robert J. White

Jontae Jackson,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Jontae Jackson, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1.    Counts of Conviction

The defendant will waive her right to an indictment and will plead guilty to Counts 2 and 3 of the Information. Count 2 charges the defendant with conspiracy to commit federal program bribery under 18 U.S.C. § 371. Count 3 charges the defendant with aggravated identity theft during and in relation to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1028A.

2.     **Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which she is

pleading guilty carry the following minimum and maximum statutory

penalties:

| Count 2 | Term of imprisonment: | Up to 5 years |
|---|---|---|
| | Fine: | Up to $250,000, or twice the pecuniary gain |
| | Term of supervised release: | 3 years |
| Count 3 | Term of imprisonment: | 2 years mandatory imprisonment, to run consecutive to any term of imprisonment imposed on Count 1 |
| | Fine: | Up to $250,000, or twice the pecuniary gain |
| | Term of supervised release: | 2 years |

3.     **Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence

consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will not bring additional charges against

the defendant for the conduct reflected in the factual basis.

4.     **Elements of Count of Conviction**

The elements of Count 2 are:

1.   That two or more persons conspired, or agreed, to commit the crime of federal program bribery.

2.   That the defendant knew of the conspiracy and its objects.

3.   That the defendant joined the conspiracy with the intent that at least one of conspirators engage in conduct that satisfies the elements of federal program bribery; and

4.   That a member of the conspiracy did one of the overt acts described in the information for the purpose of advancing or helping the conspiracy.

The elements of Count 3 are:

1.   That the defendant committed the felony violation of conspiracy to commit wire fraud, which is a felony violation listed in the statute;

2.   That the defendant knowingly used a means of identification of another person without lawful authority;

3.   That the defendant knew the means of identification belonged to another person; and

4.   That the use was during and in relation to the felony of conspiracy to commit wire fraud.

5.    **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Between the dates alleged in the Information, the defendant Jontae Jackson knowingly agreed to commit the crime of federal program bribery with Zina Thomas (a/k/a Zina Morgan) and others to remove homes from the Wayne County property tax foreclosure list so that ownership in those homes could be fraudulently transferred from the homeowners, without their authority, to others via forged quitclaim deeds.

Between the dates alleged in the Information, Jackson was employed by the Wayne County Treasurer's Office as a taxpayer assistant. Wayne County, Michigan, is a local government agency which received more than $10,000 in federal assistance in a one-year period between September 2022 and April 2023. In her position as taxpayer assistant, Jackson had the authority to remove properties from the tax foreclosure list within the Wayne County Property Tax Administration (PTA) System.

Sometime in November 2022, Thomas, who was employed as the Director of Home Ownership Programs for the United Community Housing Coalition (UCHC), approached Jackson about removing properties from the tax foreclosure list. Thomas said that she had a plan for both of them to make money on removed properties. Then, in early 2023, Thomas and Jackson agreed that Thomas would identify particular properties for possible removal from the tax foreclosure list and Thomas would pay Jackson $3,000 for each property removed and later sold.

Over the course of several months, Thomas identified for Jackson numerous properties for possible removal from the tax foreclosure list. Jackson researched the properties in the PTA System to determine if the properties could be removed from the forfeiture list, subject to documentation showing they were "owner occupied." If eligible for such removal, Jackson would tell Thomas. Thomas would then obtain fraudulent documentation, including quitclaim deeds and driver's licenses, meant to show that the property was "owner occupied" and eligible for a tax debt payment plan in lieu of foreclosure. Thomas used her Google electronic mail account (Gmail account) to email some of the

fraudulent documentation to her UCHC electronic mail account, which she would then use to email fraudulent documentation to Jackson in Detroit. Jackson would download the fraudulent documents, make a fraudulent entry in the PTA System, and remove the property from the forfeiture list. After Jackson removed the property from the forfeiture list, Thomas fraudulently sold or transferred the properties from the homeowners, without their authority, to others via forged quitclaim deeds.

In some instances, Jackson knew that the quitclaim deeds and driver's licenses Thomas sent Jackson were fraudulent and included another person's means of identification (e.g., a legal name or date of birth). In those instances, Jackson also knew that Thomas's use of the other person's means of identification in the fraudulent documentation was done without the person's consent or lawful authority. For example, in April 2023, Thomas used her UCHC account to email Jackson at Jackson's Wayne County Treasurer's Office account a copy of a counterfeit driver's license purportedly issued in the legal name of another person, victim A.P., without lawful authority in connection with the removal of a property located on Montgomery Street, Detroit,

Michigan (the Montgomery property). While the counterfeit driver's license contained A.P.'s legal name, it did not depict A.P. in the license photograph. Jackson was thus aware that Thomas's use of A.P.'s means of identification was done without A.P.'s consent or lawful authority.

Jackson further agrees that the Thomas's Gmail account used servers located outside Michigan. As such, when Thomas used her Gmail account to email the fraudulent documentation to Thomas's UCHC account (which she subsequently emailed to Jackson in Detroit), Thomas caused electronic communications to be routed outside Michigan and therefore in interstate commerce.

Consistent with their agreement, from approximately March 2023 through September 2023, Thomas gave, offered, and agreed to give multiple bribe payments to Jackson, and Jackson solicited, demanded, accepted, and agreed to accept multiple bribe payments in exchange for Jackson removing a number of properties from tax foreclosure status. The value of these properties was in excess of $3,500,000 and less than $9,500,000. In sum, Thomas sent Jackson and Jackson received via Cash App (an electronic payment platform) a total of approximately

$17,950 in bribe payments. The defendant admits that the over $17,000 she received from Thomas were the proceeds of bribe payments.

In addition, in lieu of placing properties with outstanding tax debt on the foreclosure list, the defendant also had the authority to establish debt payment plans for the properties. Over the course of several months in 2023, Jackson and Thomas identified several properties for which the defendant could exercise her official discretion to extend payment plans in lieu of placing them on the forfeiture list. At Thomas's request, Jackson extended payment plans to these properties, and, in exchange, Thomas paid Jackson on multiple occasions, in aggregate, over $1,500. Jackson admits that the over $1,500 she received from Thomas were the proceeds of bribe payments.

Similarly, in 2023, at the request of Person 1, Jackson exercised her official discretion to extend payment plans to certain properties identified by Person 1 in lieu of placing those properties on the forfeiture list. For Jackson's official actions, Person 1 paid Jackson on multiple occasions, in aggregate, over $2,600. Jackson admits that the over $2,600 she received from Person 1 were the proceeds of bribe payments.

Jackson admits that during the bribery scheme with Thomas and Person 1 in and around 2023, she accepted or agreed to accept occasional bribes that are not accounted for in the estimated bribe amounts above. Jackson further admits that she does not recall every bribe she solicited, agreed to accept, or accepted during her tenure at the Wayne County Treasurer's Office.

**6.    Advice of Rights**

The defendant has read the Information, has discussed the charges and possible defenses with her attorney, and understands the crime charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.    The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.     The right to confront and cross-examine adverse witnesses
at trial;

F.     The right to testify or not to testify at trial, whichever the
defendant chooses;

G.     If the defendant chooses not to testify at trial, the right to
have the jury informed that it may not treat that choice as
evidence of guilt;

H.     The right to present evidence or not to present evidence at
trial, whichever the defendant chooses; and

I.     The right to compel the attendance of witnesses at trial.

**7.     Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry
additional consequences under federal or state law. The defendant
understands that, if she is not a United States citizen, her conviction
here may require her to be removed from the United States, denied
citizenship, and denied admission to the United States in the future.
The defendant further understands that the additional consequences of
her conviction here may include, but are not limited to, adverse effects
on the defendant's immigration status, naturalized citizenship, right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold

certain licenses or to be employed in certain fields. The defendant

understands that no one, including the defendant's attorney or the

Court, can predict to a certainty what the additional consequences of

the defendant's conviction might be. The defendant nevertheless affirms

that the defendant chooses to plead guilty regardless of any

immigration or other consequences from her conviction.

## 8.     Defendant's Guideline Range

### A.     Court's Determination

The Court will determine the defendant's guideline range at

sentencing.

### B.     Acceptance of Responsibility

The government recommends under Federal Rule of Criminal

Procedure 11(c)(1)(B) that the defendant receive a two-level reduction

for acceptance of responsibility under USSG § 3E1.1(a). Further, if the

defendant's offense level is 16 or greater and the defendant is awarded

the two-level reduction under USSG § 3E1.1(a), the government

recommends that the defendant receive an additional one-level

reduction for acceptance of responsibility under USSG § 3E1.1(b). If,

however, the government learns that the defendant has engaged in any

conduct inconsistent with acceptance of responsibility—including, but

not limited to, making any false statement to, or withholding

information from, her probation officer; obstructing justice in any way;

denying her guilt on the offense to which she is pleading guilty;

committing additional crimes after pleading guilty; or otherwise

demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under

this paragraph, will be free to argue that the defendant not receive *any*

reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for

obstruction of justice under USSG § 3C1.1.

## C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal

Procedure 11(c)(1)(B) that the following guideline provisions apply:

<u>Count 1 – Conspiracy to Commit Federal Program Bribery</u>

| | |
|---|---|
| § 2C1.1(a)(1) Base Offense Level (receiving a bribe; extortion under color of official right; deprivation of honest services by a public official) | 14 |

§ 2C1.1(b) Specific Offense Characteristics
  § 2C1.1(b)(1) More than one bribe   +2
  § 2C1.1(b)(2) Value of payment or benefit
  to be received for the payment   +18

<u>Count 2 – Aggravated Identity Theft</u>

§ 2B.1.6 – the guideline sentence is the 2-year term of imprisonment required by statute.

**D. Factual Stipulations for Sentencing Purposes**

The parties have no additional factual agreements for sentencing purposes.

**E. Parties' Obligations**

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

**F. Not a Basis to Withdraw**

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties'

recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 9.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B.    Imprisonment

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the midpoint of the defendant's guideline range as determined by the Court.

#### 2.    No Right to Withdraw

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that she will have no

right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.   Supervised Release

#### 1.   Recommendation

The parties have no agreement as to supervised release.

#### 2.   No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.  Fines**

The parties have no agreement as to a fine.

**E.  Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within

three weeks of receiving it from government counsel. The defendant

agrees to participate in a presentencing debtor's examination if

requested to do so by government counsel.

**F.    Forfeiture**

As part of this agreement, defendant agrees to forfeit any and all

property, real or personal, which constitutes or is derived, directly or

indirectly, from proceeds traceable to her participation in the described

scheme under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C.

§ 2461(c). Specifically, defendant agrees to the entry of a forfeiture

money judgment against her, in favor of the United States, in the

amount of $20,575 (the "Money Judgment"). Defendant agrees that she

personally obtained at least $20,575 as a result of the scheme described

in the Factual Basis, above.

Following entry of this Rule 11 Agreement, defendant agrees to

the Court's prompt entry of one or more orders of forfeiture and agrees

to sign a Stipulated Preliminary Order of Forfeiture for the Money

Judgment. Defendant agrees that the forfeiture order shall be final and

effective as to her interests at entry.

Defendant acknowledges that she spent and dissipated the criminal proceeds that she obtained in connection with the described scheme, making these funds unavailable for forfeiture. For this reason, defendant agrees that the Money Judgment may be satisfied, to whatever extent possible, from any other property she owns or which is under her dominion and control. Defendant explicitly agrees to the forfeiture of any and all assets she has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property in accordance with this agreement. Defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States and will execute any legal documents that may be required to transfer title to the United States. Defendant will take whatever steps are necessary to ensure that her assets are not

sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this plea agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment. Defendant acknowledges that she understands that forfeiture is part of the sentence that may be imposed on her in this case and waives her right to challenge any failure by the court to advise her of this, under Rule 11(b)(1)(J), or otherwise, at the time her guilty plea is accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and incorporation of forfeiture in the judgment and waives any right she may have to request a jury determine forfeiture under Rule 32.2(b)(5).

### G.    Special Assessment

The defendant understands that she will be required to pay a special assessment of $200 due immediately upon sentencing.

**10.  Appeal Waiver**

The defendant waives any right she may have to appeal her conviction on any grounds. The defendant also waives any right she may have to appeal her sentence on any grounds, unless her sentence of imprisonment exceeds the top of the guidelines as determined by the Court.

**11.  Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12.   Remedies for Withdrawal, Breach, Rejection, or Vacatur

If the defendant is allowed to withdraw her guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives her double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13.    Use of Withdrawn Guilty Plea**

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14.    Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15.    Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement.

If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**16.   Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 P.M. on November 4, 2025. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Jerome F. Gorgon, Jr.
United States Attorney

_____
John K. Neal
Chief, Anti-Corruption Unit
Assistant U.S. Attorney

_____
Ryan A. Particka
Assistant U.S. Attorney

Dated: November 3, 2025

By signing below, the defendant and her attorney agree that the defendant has read or been read this entire document, has discussed it with her attorney, and has had a full and complete opportunity to confer with her attorney. The defendant further agrees that she understands this entire document, agrees to its terms, has had all of her questions answered by her attorney, and is satisfied with her attorney's advice and representation.

_____
Vincent J. Toussaint
Attorney for Defendant

_____
Jontae Jackson
Defendant

Dated: Nov. 3, 2025

Page **24** of **24**